# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JAIME PLACENSIA RODRIGUEZ,

        Plaintiff,

   v.

ANDREW SAUL,
Commissioner of Social Security,[1]

        Defendant.

_____/

Case No.  1:19-cv-00016-SKO

ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

(Doc. 1)

## I.     INTRODUCTION

On January 3, 2019, Plaintiff Jaime Placensia Rodriguez ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on September 12, 2019).  He is therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 6, 8.)

## II.    FACTUAL BACKGROUND

On August 8, 2015, Plaintiff protectively filed an application for DIB payments, alleging he became disabled on March 28, 2012, due to the following impairments: lumbar herniated disc, major depression, acute neck pain, constant pain in knees, stress, anxiety, insomnia, no energy, no hunger, constipation and frequent urination.  (Administrative Record ("AR") 14, 15–16, 71–72, 116.) Plaintiff was born on January 17, 1972 and was 46 years old as of the hearing date.  (*See* AR 35.) He completed high school, can speak English and Spanish, and has past work experience as an electronics supervisor, field worker, sales consultant and property manager.  (AR 35–40, 223.)

### A.    Summary of Relevant Medical Evidence[3]

#### 1.    Community Medical Centers

On March 8, 2012, Plaintiff presented at Community Medical Centers with symptoms of right knee pain.  (AR 357.)  Plaintiff reported that he "twisted his knee in 2011" and had been having pain with "locking, popping and clicking."  (AR 357.)  Plaintiff reported that he had an MRI in June 2011 that "showed Lateral meniscal tear."  (AR 357.)  The examining physician recommended to Plaintiff that arthroscopy could help his knee pain and Plaintiff decided to proceed with right knee arthroscopy and meniscectomy.  (AR 358.)  On March 28, 2012, Plaintiff underwent a "lateral meniscectomy of right knee."  (AR 359.)

#### 2.    Turning Point of Central California

On September 21, 2015, Plaintiff went to Turning Point of Central California for an initial intake assessment to address his mental impairments.  (*See* AR 549.)  Plaintiff reported that to live a happy life he would need to "feel better in public, have more motivation, work, and be with [his] sons."  (AR 549.)  Plaintiff reported he has "abused" alcohol since age 17 and has used drugs.  (AR 550.)  The therapist assessed the severity of Plaintiff's anxiety as a 3 out of 8 and his depression as a 5 out of 8.  (AR 551.)  The therapist also noted that Plaintiff was "cooperative and respectful," "calm," and "alert and oriented."  (AR 553.)  On October 8, 2015, Plaintiff returned for a second appointment to begin cognitive behavioral therapy.  (*See* AR 556.)  The therapist recommended

---

[3] The parties also submitted summaries of the relevant medical evidence with their respective briefs.  (*See* Doc. 16 at 3–8; Doc. 19 at 2–3.)

Plaintiff attend therapy sessions three times per month.[4]  (*See* AR 556.)

### 3. Emergency Room Visits

On October 3, 2014, Plaintiff saw emergency department physician Douglas Kerr, M.D. and reported he "was moving around yesterday" and experienced an "onset of left back pain radiat[ing] down to leg." (AR 387.)  Plaintiff was released later that day in stable condition.  (*See* AR 389.) On August 5, 2015, Plaintiff was seen by emergency department physician John David McNaughton, M.D. for "chronic back pain." (AR 405.)  Dr. McNaughton noted Plaintiff's back pain was "controlled" and directed Plaintiff to rest.  (AR 406.)

### 4. Erin Dueker, P.T.

Plaintiff intermittently underwent physical therapy for his back problems and on September 22, 2015, presented to Dueker Fee Physical Therapy for an initial evaluation.  (*See* AR 439.) Physical therapist Erin Dueker evaluated Plaintiff and noted that the pain in his lumbar area was an average of 7 out of 10 and the pain in his cervical area was an average of 4 out of 10.  (AR 439.) Dr. Dueker assessed that Plaintiff would "benefit from therapeutic intervention of stretching, strengthening, pain management, postural corrections, and teaching him a home exercise program appropriate for his condition." (AR 440.)  Dr. Dueker recommended Plaintiff return 1-2 times per week for a total of 12 visits in 3 months.  (AR 441.)  A treatment note from May 2, 2016, states that Dr. Dueker saw Plaintiff for "13 visits," although the record does not appear to contain treatment notes from most of these visits.  (*See* AR 618.)

### 5. Robert Fernandez, M.D.

On October 8, 2014, Plaintiff established care with family practice physician Robert Fernandez.  (*See* AR 521.)  At his initial visit, Plaintiff reported "severe back pain which started on 10/3/14 after lifting heavy objects." (AR 521.)  Dr. Fernandez noted that Plaintiff took diazepam and ibuprofen for his pain. (AR 521.)  As to Plaintiff's mental symptoms, Dr. Fernandez stated that Plaintiff had no manic/depressed moods, excessive anxiety, or problems with memory, concentration, or thinking. (AR 521.)  Dr. Fernandez further noted that Plaintiff was "oriented to person, place, and time . . . able to demonstrate good judgment and reason," and "without . . .

---

[4] The record appears to contain only two treatment notes from Turning Point of Central California.

abnormal affect or abnormal behaviors." (AR 522.) On November 6, 2014, Dr. Fernandez wrote a note excusing Plaintiff from work for 12 weeks and referred Plaintiff to start physical therapy. (AR 498–99.) Dr. Fernandez also noted that Plaintiff was "well nourished, alert and cooperative, and appears to be in mild acute distress secondary to pain." (AR 499.) On January 8, 2015, Dr. Fernandez noted that Plaintiff reported his "pain is going away and he is able to tolerate better" and Plaintiff "only had one flare up since his last visit." (AR 450.) Dr. Fernandez also noted that Plaintiff declined to go to physical therapy because he did not want to travel to Fresno. (AR 450.) That same day, Dr. Fernandez cleared Plaintiff to return to work. (AR 449.)

On August 6, 2015, Dr. Fernandez saw Plaintiff after he had been in the emergency room the night before for "left arm numbness." (AR 466.) Dr. Fernandez noted that Plaintiff had "attempted to go back to work doing construction which worsened his back" and he was "having severe radicular neck pain which radiates down his left arm to his hand." (AR 466.) As to his mental condition, Dr. Fernandez noted Plaintiff "[d]emonstrated good judgment and reason and normal affect" but was also taking Cymbalta. (AR 466.) Plaintiff returned to Dr. Fernandez on September 17, 2015 and reported that he continued to have chronic pain. (AR 422.) Dr. Fernandez noted that Plaintiff was continuing his physical therapy for the knee and was "responding to the Cymbalta and is feeling less anger/emotional lability." (AR 422.)

On November 19, 2015, Plaintiff saw Dr. Fernandez for a follow up visit. (AR 566.) At that visit, Plaintiff reported his pain as only a 3 out of 10. (AR 566.) However, Dr. Fernandez also noted that Plaintiff continued "to have severe back pain with the slightest activity or any physical work" and continued with his physical therapy. (AR 572.) As to his mental state, Dr. Fernandez noted Plaintiff was "very depressed especially recently since his wife and him separated" but was "[w]ell developed, well nourished, alert and cooperative, and appears to be in no acute distress." (AR 572.) On June 17, 2016, Plaintiff saw Dr. Fernandez and reported that "[h]is pain has improved but he has been taking care of himself." (AR 777.) Plaintiff also reported "feel[ing] better in regards to his depression[.]" (AR 777.) Plaintiff returned to Dr. Fernandez on August 31, 2016, and Dr. Fernandez noted that Plaintiff was "protecting his back and not lifting or bending at his waist" and had "reduced his dose on his antidepressant to once a day." (AR 768.) On October 31, 2016, Dr.

Fernandez stated Plaintiff's "pain is improving and now he is trying to watch his movements to not injure his back" and that his "back pain [is] at 3/10 usually but can go up to 8/10." (AR 774.)

On January 11, 2017, Dr. Fernandez stated Plaintiff's pain was "fairly well controlled" and advised Plaintiff to "continue his current pain regimen" since it was working well. (AR 801.) On March 8, 2017, Dr. Fernandez noted that Plaintiff reported his physical pain as a 2 out of 10 and was "in no acute distress" mentally. (AR 757.) On June 14, 2017, Dr. Fernandez refilled Plaintiff's MScontin and Percocet prescriptions, noted that Plaintiff's pain is "better but has intermittent waxing and waning," his pain was currently "a 3/10," and his "depression has good and bad days." (AR 755.) On August 8, 2017, Dr. Fernandez noted that Plaintiff showed a decreased range of motion. (AR 752.) On September 13, 2017, Dr. Fernandez noted that Plaintiff's physical pain was a 3 out of 10 and his "depression has good and bad days." (AR 748.)

On September 13, 2017, Dr. Fernandez completed medical source statements as to Plaintiff's physical impairments and mental impairments. (*See* AR 734–40.) As to Plaintiff's physical impairments, (*see* AR 734–37), Dr. Fernandez stated he treated Plaintiff every few months since October 8, 2014 and diagnosed Plaintiff with "L5-S1 herniated disc, chronic pain, [and] major depression." (AR 734.) Dr. Fernandez stated Plaintiff's prognosis was "good." (AR 734.) Dr. Fernandez opined that Plaintiff could walk 10 city blocks without rest or severe pain, sit for 15 minutes at a time for a total of 2 hours, stand for 30 minutes at a time for a total of 2 hours, sit for 2 hours in an 8-hour workday, stand/walk for 4 hours in an 8-hour workday; and needed to shift positions at will, walk every 30 minutes for 10 minutes at a time, take breaks once an hour for 10 minutes at a time. (AR 734–35.) Dr. Fernandez further opined that Plaintiff could lift less than 10 pounds frequently, and 10 pounds occasionally, and never twist, stoop. crouch, or climb stairs or ladders. (AR 735.) Dr. Fernandez opined that Plaintiff was capable of low stress work, would have "good days" and "bad days," and would be off task 25% of the time or more. (AR 736.)

As to Plaintiff's mental impairments, (*see* AR 738–40), Dr. Fernandez diagnosed Plaintiff with "major depression/anxiety," with a "good" prognosis. (AR 738.) Dr. Fernandez opined that Plaintiff's mental impairments would preclude work performance for 15% or more of each workday in remembering locations and work-like procedures, understanding and remembering instructions,

carrying out detailed instructions, maintaining attention and concentration, performing activities within a schedule, accepting instructions, getting along with coworkers, maintaining socially appropriate behavior, responding appropriately to changes in the work setting, and completing a normal workweek without interruptions, and would preclude work performance for 5-10% or more of each workday in all other areas. (*See* AR 738–39.) Dr. Fernandez included the following notes in support of his assessment: "cognitive functions impacted by opiate therapy," "fatigue from medical therapy," and "depression causes labile moods." (AR 738–39.) Dr. Fernandez opined that Plaintiff would likely to be absent from work or unable to complete an eight-hour workday at least 5 days per month. (AR 740.)

### 6. Dale Van Kirk, M.D.

On August 22, 2017, orthopedic surgeon Dr. Dale Van Kirk completed a medical source statement following a consultative examination of Plaintiff. (AR 606–17.) Dr. Van Kirk noted that Plaintiff was "a very slow mover physically, as well as thinking . . . He responds very slowly." (AR 613.) Dr. Van Kirk opined that Plaintiff could lift and/or carry 10 pounds frequently and 20 pounds occasionally, sit/stand/walk one hour at a time, sit for 8 hours a day, and stand/walk for 6 hours a day, had no manipulative limitations, could frequently operate foot controls, occasionally climb stairs/ramps/ladders/scaffolds, stoop, and kneel, continuously balance, and never crouch or crawl. (AR 606–10.) Dr. Van Kirk further opined that Plaintiff could be exposed continuously to unprotected heights, moving mechanical parts, and operating a motor vehicle, frequently to dust, odors, fumes, and pulmonary irritants and vibrations, occasionally to humidity and wetness, and never to extreme cold or extreme heat, and could work in a loud (e.g., heavy traffic) office environment. (*See* AR 611.) Dr. Van Kirk also opined Plaintiff could perform the following activities: shopping, traveling without a companion, ambulate without using a wheelchair or walker, walk a block at a reasonable pace on rough or uneven surfaces, use public transportation, climb stairs without using a handrail, prepare meals, care for his personal hygiene, and use papers/files. (*See* AR 612.)

### 7. State Agency Physicians

State agency physician D. Funkenstein, M.D. reviewed the record and assessed Plaintiff's

mental limitations on October 20, 2015. (AR 76–77.) Dr. Funkenstein opined that Plaintiff had affective disorders that were non-severe, had no restrictions on activities of daily living or maintaining social functioning, and had mild difficulties in maintaining concentration, persistence or pace. (AR 76.) Another state agency physician, J. Mitchell, M.D., assessed Plaintiff's physical RFC on October 20, 2015. (AR 78–79.) Dr. Mitchell found that Plaintiff could: lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand, sit and/or walk about 6 hours in an 8-hour workday; push and/or pull an unlimited amount; climb ramps/stairs, balance, kneel, and crawl frequently; and climb ladders/ropes/scaffolds, stoop, and crouch occasionally. (AR 78–79.)

Upon reconsideration on February 10, 2016, another state agency physician, Jane Cormier, Ph.D, modified Dr. Funkenstein's findings as to mental limitations, finding that Plaintiff had mild restrictions in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. (AR 90.) However, Dr. Cormier affirmed Dr. Funkenstein's finding that Plaintiff's mental impairments were non-severe. (AR 90.) On February 12, 2016, another state agency physician, G. Bugg, M.D., reviewed the record and affirmed Dr. Mitchell's findings as to Plaintiff's physical RFC. (*See* AR 92–94.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on October 22, 2015, and again on reconsideration on February 12, 2016. (AR 112–15, 119–23.) On February 23, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 124–25.)

On October 25, 2017, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 31–70.) Plaintiff testified that he last worked as a part-time property manager but stopped working completely when he hurt his back in 2014. (AR 40–41.) He stated that he was able to do household activities on good days, such as mowing the lawn, taking out the trash, washing the car, and "tun[ing] up" the car, but they take him a long time to complete. (AR 45–46.) Plaintiff stated that his general pace is slower since his back problems started, and he takes breaks every 15-20 minutes regardless of what activity he is doing. (*See* AR 46.) Plaintiff further testified he is prescribed pain medication, attends physical therapy, and stretches in the mornings. (AR 47.) Plaintiff testified he is not a candidate for surgery and does

not wear a back brace, but he takes morphine and oxycodone for pain.  (*See* AR 48–49.)

As to his mental limitations, Plaintiff testified he takes anxiety medications and suffers from depression and anxiety.  (AR 59.)  Plaintiff stated he has periodic anxiety attacks that are triggered by "noise."  (AR 59.)  He testified that when these anxiety attacks occur, he has racing thoughts, increased blood pressure, and "just ha[s] to get away from the noise."  (AR 59–60.)  Plaintiff testified he saw a therapist previously but stopped going about two years ago.  (*See* AR 63–64.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a sales attendant, Dictionary of Occupational Titles (DOT) code 299.677-010, which was light work with a specific vocational preparation (SVP)[5] of 2; and a salesperson, DOT code 279.357-057, which was light work with a SVP of 3.  (AR 61–62.)  The ALJ asked the VE to consider a person of Plaintiff's age, education, and with his work background.  (AR 64.)  The VE was also to assume this person could lift 20 pounds occasionally, lift or carry 10 pounds frequently, stand or walk 6 out of 8 hours, sit for 6 out of 8 hours, perform frequent climbing of ramps and stairs, balancing, kneeling, and crawling, perform occasional crouching and climbing of ladders, ropes, or scaffolds, and occasional stooping, should avoid more than occasional exposure to hazards like moving machinery and extreme cold temperatures, and can work in an environment with moderate noise intensity.  (AR 64–65.)  The VE testified that such a person could perform Plaintiff's past relevant work as per the DOT but would not be able to perform the sales attendant job as generally performed.  (*See* AR 65–66.)

In a second hypothetical, the ALJ asked the VE to consider an individual with the limitations described in the first hypothetical except that the person can sit, stand, or walk for one hour uninterrupted, can change positions for five minutes while remaining on task, should avoid ladders, ropes and scaffolds and kneeling, crouching, crawling, extremely hot or cold temperatures, and hazards, can tolerate occasional exposure to humid work environments, can frequently operate

---

[5] Specific vocational preparation (SVP), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id.*

bilateral foot controls, can perform work involving exposure to fumes, dust, odors, and vibration, and can perform work in an environment with moderate noise intensity. (AR 66–67.) The VE testified that such a person could perform Plaintiff's past work as a salesperson as actually and generally performed. (AR 67.)

Plaintiff's attorney asked the VE to consider a hypothetical individual that had the limitations described in the first hypothetical except that the individual would need to take a 10-minute rest break every hour. (AR 67.) The VE testified that the individual would not be able to perform any of Plaintiff's past relevant work or other work. (AR 67.) Plaintiff's attorney asked the VE to consider another hypothetical with the same limitations as the previous hypothetical except that the individual would be off-task 25 percent of the time. (AR 67–68.) The VE testified that such an individual would not be able to perform Plaintiff's past work or any other work. (AR 68.)

## C. The ALJ's Decision

In a decision dated April 9, 2018, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 13–24.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 15–23.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since the alleged onset date (step one). (AR 15–16.) At step two, the ALJ found that Plaintiff had the severe impairments of "degenerative disc disease of the lumbar spine" and "status post right knee arthroscopy with a partial meniscectomy." (AR 16.) The ALJ further found Plaintiff had no limitations understanding, remembering, or applying information; mild limitations interacting with others; mild limitations in concentration, persistence, and pace; and no limitation in adapting or managing himself. (AR 16–17.) The ALJ therefore found that Plaintiff's mental impairments, including his anxiety and depression, were non-severe. (AR 17.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings (step three). (AR 17–18.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity … We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff

retained the RFC:

> to perform light work as defined in 20 CFR [§] 404.1567(b) and 416.967(b) except [Plaintiff] can sit, stand or walk for one hour uninterrupted after which he can change positions for five minutes while on task. [Plaintiff] can occasionally stoop, kneel, and climb stairs or ramps. He can frequently operate bilateral foot controls. [Plaintiff] should avoid extreme hot or cold temperatures in the work place; hazards such as moving machinery or unprotected heights; crouching, crawling, and climbing ladders, ropes, or scaffolds. He can tolerate occasional exposure to humidity and frequent exposure to fumes, dust, odors, and vibration. [Plaintiff] is also limited to moderate noise level intensity environments.

(AR 18.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 19.) At step five, the ALJ found that Plaintiff could perform past relevant work as a salesperson. (AR 22–23.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on July 18, 2018. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

## III.    LEGAL STANDARD

### A.    Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.      Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review …" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the

evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 (citations omitted) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins*, 466 F.3d at 885). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ erred in finding at step two that Plaintiff's mental impairments were non-severe, improperly rejected Dr. Fernandez's opinions as to Plaintiff's mental limitations and physical limitations, and improperly discounted Plaintiff's credibility. (*See* Doc. 16 at 10–15.) Defendant counters that the ALJ's step two determination, evaluation of Dr. Fernandez's opinions, and credibility determination were proper. (Doc. 19 at 4–9.) The Court agrees with Defendant's position.

### A.    The ALJ Properly Found Plaintiff's Mental Impairments Were Non-severe.

#### 1.    Legal Standard

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987)). "[A]t the step two inquiry, . . . the ALJ must consider the combined effect of all of the claimant's

impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Id.* at 1290 (citing 42 U.S.C. § 423(d)(2)(B) and TITLES II & XVI: THE SEQUENTIAL EVALUATION PROCESS, Social Security Ruling ("SSR") 86-8 (S.S.A. 1986)).

"[A]n impairment is not severe if it does not significantly limit [the claimant's] . . . ability to do basic work activities." *Id.* at 1290 (citing 20 C.F.R. §§ 404.1520(c) & 404.1521(a)). "[B]asic work activities are the abilities and aptitudes necessary to do most jobs." TITLES II & XVI: MED. IMPAIRMENTS THAT ARE NOT SEVERE, SSR 85-28 (S.S.A. 1985). Examples of "basic work activities" include (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," (2) "[c]apacities for seeing, hearing, and speaking," (3) "[u]nderstanding, carrying out, and remembering simple instructions," (4) "[u]se of judgment," (5) "[r]esponding appropriately to supervision, co-workers and usual work situations," and (6) "[d]ealing with changes in a routine work setting." 20 C.F.R. § 416.922(b).

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an [individual's] ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85–28). Additionally, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing SSR 85–28); *cf. Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (finding that the claimant "failed to meet his burden of establishing disability" where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results").

"Great care should be exercised in applying the not severe impairment concept." SSR 85–28. "The Commissioner has stated that '[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Webb*, 433 F.3d at 687 (alteration in original) (quoting SSR 85–28). Ultimately, "[t]he severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S.

1  at 153. In other words, "the step-two inquiry is a de minimis screening device to dispose of
2  groundless claims." *Smolen*, 80 F.3d at 1290 (*citing Yuckert*, 482 U.S. at 153–54).

3      Nonetheless, an ALJ may properly find an impairment non-severe at step two if there is
4  substantial evidence that the impairment does not have a significant effect on the plaintiff's ability
5  to work, *Smolen*, 80 F.3d at 1290, and "[t]he plaintiff has the burden of establishing the severity of
6  the impairment." *Cookson v. Comm'r of Soc. Sec.*, No. 2:12–cv–2542–CMK, 2014 WL 4795176,
7  at *2 (E.D. Cal. Sept. 25, 2014); *see, e.g.*, *Webb*, 433 F.3d at 686 (stating an impairment at step two
8  "may be found not severe *only if* the evidence establishes a slight abnormality that has no more than
9  a minimal effect on an individual's ability to work") (emphasis in original; internal quotation marks
10  omitted); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("The claimant carries the initial
11  burden of proving a disability in steps one through four of the analysis.") (citing *Swenson v. Sullivan*,
12  876 F.2d 683, 687 (9th Cir. 1989).

13      **2.  Analysis**

14      Plaintiff contends that the ALJ erred in finding that Plaintiff's mental impairments were non-
15  severe because her finding was contradicted by the medical evidence and Dr. Fernandez's opinion.[6]
16  (Doc. 16 at 10–13.) The Court disagrees and finds that the ALJ properly considered and evaluated
17  Plaintiff's mental impairments.

18      In evaluating the severity of Plaintiff's mental impairments, the ALJ analyzed the
19  impairments under each of the four functional areas that make up the paragraph B criteria and cited
20  numerous treatment notes and medical records in support of her evaluation. (*See* AR 16–17.) First,
21  the ALJ found that Plaintiff was not limited in understanding, remembering, or applying
22  information. (AR 16.) The ALJ noted that Plaintiff testified to only one instance in which he had
23  difficulties with his job performance, which was in 2012 when he failed to meet a sales quota. (*See*
24  AR 16.) Next, the ALJ found that Plaintiff had mild limitations interacting with others. (AR 16.)
25  The ALJ noted that throughout the available treatment notes, doctors describe Plaintiff as "pleasant,

26

27  [6] The Court finds that the ALJ did not err in her step two determination and did not err in her evaluation of Dr.
Fernandez's opinion regarding Plaintiff's mental impairments. For clarity, the Court first discusses the ALJ's step two
28  determination generally and next discusses the ALJ's evaluation of Dr. Fernandez's opinions regarding Plaintiff's
mental impairments and physical impairments together.

cooperative, open, and engaged," which "suggests . . . that [Plaintiff] retains the ability to cooperate with others, sustain conversations, and respond appropriately to social cues."  (AR 16–17) (citing AR 364–592, 606–17, 640–63, 690–733, 748–827).

The ALJ also found Plaintiff had mild limitation in concentration, persistence, and pace, noting that Plaintiff has reported having anxiety attacks triggered by excess noise.  (*See* AR 17.) Finally, the ALJ found Plaintiff was not limited in managing himself because Plaintiff reported "activities of daily living including preparing his own meals, using public transportation, tending to his own personal needs, shopping . . . performing . . . chores or yard work, using the computer . . . caring for his two minor sons, and managing his own finances."  (AR 17) (citing AR 249–60, 297–306).

The ALJ also discussed the paragraph C criteria and explained:

> [T]here is no medically documented history that [Plaintiff's] disorder(s) existed over a period of at least two years and that as a result of the disorder(s), [Plaintiff] had a minimal capacity to adapt to changes in his environment or to demands that were not already a part of his daily life.  There is also no evidence that [Plaintiff] received any ongoing medical treatment, mental health therapy, psychosocial support, or resided in a highly structured setting that diminished the symptoms and signs of his mental disorder.  To the contrary, in this case, [Plaintiff] displayed the ability to adjust to changes in his environment and to function independently outside a highly structured living arrangement.

(AR 17.)

The Court finds that the ALJ's step two determination was supported by substantial evidence in the record and an extensive discussion and analysis of the relevant criteria.[7]  The ALJ properly analyzed Plaintiff's mental impairments in each of the four functional areas, cited to numerous treatment records and self-reports from Plaintiff to support her analysis, and provided multiple proper reasons for finding Plaintiff's mental impairments did not have a significant impact on his ability to work.  (*See* AR 16–17); *Smolen*, 80 F.3d at 1290; *see also Fry v. Commissioner of Social Security*, No 2:15-cv-2023-KJN (PS), 2017 WL 999459, at *3 (E.D. Cal. Mar. 15, 2017) ("[T]he

---

[7] The Court also finds the ALJ properly evaluated Dr. Fernandez's opinion as to Plaintiff's mental impairments, as explained below.

ALJ relied on substantial evidence from the record to support her reasoning and did not err at step two in finding plaintiff's plantar fasciitis to be a non-severe impairment"); *Kaur v. Saul*, No. 2:18-cv-00933-AC, 2019 WL 4013601, at *4 (E.D. Cal. Aug. 26, 2019). Thus, the Court finds that the ALJ's step two determination is supported by substantial evidence and the Court will not disturb the ALJ's finding. *See Amaral v. Berryhill*, 707 F. App'x 487, 489 (9th Cir. 2017) ("[T]his argument simply invites the Court to reweigh the evidence and arrive at a different conclusion than the ALJ; however, the Court will uphold the ALJ's rational interpretation of the evidence.").

Further, any asserted error at step two is harmless because, contrary to Plaintiff's contention, the ALJ proceeded to consider the effects of Plaintiff's mental impairments at the subsequent steps in the process. (*See, e.g.*, AR 17–18, 22.) For example, the ALJ discussed Plaintiff's mental impairments when formulating Plaintiff's RFC, stating that "two state agency consultants . . . reviewed [Plaintiff's] medical evidence" and "both doctors opined that [Plaintiff's] mental impairments are nonsevere." (AR 22) (citations omitted). Further, the ALJ explicitly stated that the RFC formulation included consideration of Plaintiff's mental impairments and "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (AR 17.) Finally, the ALJ included in Plaintiff's RFC a limitation to "moderate noise level intensity environments," which is related to Plaintiff's alleged mental impairment of anxiety, and thus the ALJ included limitations related to Plaintiff's mental impairments in the RFC formulation. (*See* AR 18.) Thus, even assuming *arguendo* that the ALJ erred at step two, any error would be harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Fry*, 2017 WL 999459, at *3; *Kaur*, 2019 WL 4013601, at *4.

**B.      The ALJ Properly Evaluated Dr. Fernandez's Opinions.**

      **1.      Legal Standard**

"If . . . a treating [physician's] opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

[the] record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *cf.*

*Reddick*, 157 F.3d at 725 ("Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record." (citation omitted)). "If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" *Orn*, 495 F.3d at 632 (quoting 20 C.F.R. § 404.1527(d)(2)).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Commissioner] considers specified factors in determining the weight it will be given." *Id.* at 631. These factors include (1) the "[l]ength of the treatment relationship and the frequency of examination;" (2) the "[n]ature and extent of the treatment relationship;" (3) the "[s]upportability" of the opinion;" (4) the "[c]onsistency" of the opinion "with the record as a whole;" (5) whether the opinion is from "a specialist about medical issues related to his or her area of specialty;" and (6) "any other factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c)(2)–(6).

Further, "[e]ven if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick*, 157 F.3d at 725 (quoting *Lester*, 81 F.3d at 830). *See also Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)); *see, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir.

2009))); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995))); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (noting that "inconsistencies and ambiguities" in a treating physician's opinion "represent specific and legitimate reasons for" rejecting the opinion). "The ALJ must do more than offer his conclusions." *Reddick*, 157 F.3d at 725. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

### 2.  Analysis

The record reflects that Dr. Fernandez was Plaintiff's treating physician from approximately October 2014 to September 2017.  (*See* AR 734.)  Dr. Fernandez completed medical source statements regarding Plaintiff's physical and mental impairments on September 13, 2017.  (AR 734–40.)  Dr. Fernandez's opinions are contained mainly in checklist-style forms where he checked boxes rating Plaintiff's functional ability and gave little to no information regarding why each particular box was checked, although the opinions also include a few brief and vaguely-worded written answers.  (*See* AR 734–40.)

As to Dr. Fernandez's opinions, the ALJ stated:

> The undersigned affords discounted weight to Dr. Fernandez's medical opinion.  The undersigned gave considerable weight to the opinion and treatment rendered by Dr. Fernandez to the extent such corroborates the severe back impairment which has continued to by symptomatic to a degree that pain medication is warranted.  Although Dr. Fernandez appears to have a treating relationship with the claimant, his assessment is overrestrictive and conclusory, providing very little explanation of the evidence relied on in forming that opinion.  It appears that Dr. Fernandez may have relied on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported.  Yet, as explained elsewhere in this decision, there exist good reasons for finding fewer limitations warranted than alleged.  The undersigned considered the treatment notes of Dr. Fernandez which largely consist of medication refill appointments for such narcotics as Percoset [sic] and MSContin from October 2016

to September 2017. . . As such, the residual functional capacity takes into account the effects of the claimant's pain medications and side effects by including a limitation to light work, with further substantial environmental restrictions as to temperature, climate, dust, noise, and hazard exposure. The degree of restrictions opined by Dr. Fernandez as to the claimant's ability to understand and remember instructions; interact with others; sustain and [sic] ordinary routine and adapt are not supported by the record.

(AR 21–22.) The ALJ adopted the findings of the State agency physicians and consultative examiner Dr. Van Kirk and gave their opinions "considerable weight." (AR 22.) The ALJ partially discounted Dr. Fernandez's opinions because portions of the opinions were inconsistent with other medical evidence and opinions in the record. (AR 21–22.) Because Dr. Fernandez's opinions were contradicted by other medical opinions, the ALJ was required to state "specific and legitimate" reasons, supported by substantial evidence, for partially rejecting Dr. Fernandez's opinions. *Trevizo*, 871 F.3d at 675 (citing *Ryan*, 528 F.3d at 1998); *see also Lester*, 81 F.3d at 830.

The ALJ properly gave little weight to the parts of Dr. Fernandez's opinions that were inconsistent with the medical evidence and other medical opinions in the record, and greater weight to the parts of Dr. Fernandez's opinions that were consistent with the rest of the evidence in the record. For example, the ALJ gave considerable weight to Dr. Fernandez's assessment that Plaintiff's back impairment is severe because that is consistent with his treatment notes. (*See* AR 21.) Conversely, the ALJ gave discounted weight to Dr. Fernandez's "overrestrictive" assessments of Plaintiff in other areas because they were not supported by the medical evidence. (AR 21.) Further, the ALJ properly gave discounted weight to Dr. Fernandez's opinion as to the severity of Plaintiff's mental impairments because the opinion was not supported by the record. (*See* AR 22.) For example, the State agency physicians found that Plaintiff had less restrictive mental limitations than Dr. Fernandez found, (*compare* AR 738–40 *with* AR 76, 90), and Dr. Fernandez consistently noted that Plaintiff's depression had "good and bad days," (AR 748, 755).

Opinions of non-examining physicians "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews*, 53 F.3d at 1041;

*Tonapetyan*, 242 F.3d at 1149.  The opinions of the State agency physicians are consistent with and supported by the medical evidence in the record—for example, Dr. Fernandez's treatment notes indicating that Plaintiff's mental and physical impairments were improving.  (*See, e.g.,* AR 422, 572, 777.)   Accordingly, because evidence in the medical record supports the State agency physicians' opinions and the ALJ must resolve conflicts and ambiguities in the medical record, *Andrews*, 53 F.3d at 1039, the ALJ did not err by relying on the opinions of the State agency physicians and discrediting parts of Dr. Fernandez's opinions inconsistent with the medical evidence.  *Corder v. Comm'r*, No. 2:16-cv-1969-KJN, 2018 WL 466265, at *4 (E.D. Cal. Jan. 18, 2018) (holding the ALJ properly relied on contrary opinions from state agency physicians to discount a treating physician's opinion where the state agency physicians' opinions were consistent with the medical record); *Lott v. Berryhill*, No 2:17-cv-00986-KJN, 2018 WL 4292247, at *4 (E.D. Cal. Sept. 7, 2018) (same); *Delgadillo v. Colvin*, No. 1:12-cv-703 GSA, 2013 WL 5476413, at *7 (E.D. Cal. Sept. 30, 2013) (same).

Further, Dr. Fernandez's opinions were given mostly in the form of a checklist, with very little information as to why any particular box was checked.  (*See* AR 734–40.)  "A treating physician's opinion that is 'conclusory or brief' and lacks support of clinical findings may be rejected by an ALJ."  *Gomez v. Berryhill*, No. 1:17-cv-01035-JLT, 2019 WL 852118, at *8 (E.D. Cal. Feb. 22, 2019) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)); *see also Crane v. Shalala*, 76 F.3d 251, 251 (9th Cir. 1996) ("The ALJ permissibly rejected . . . check-off reports that did not contain any explanation of the bases of their conclusion"); *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003).  Thus, the ALJ properly discounted the portions of Dr. Fernandez's checklist opinions that had little accompanying explanation for why a box was checked.[8]  (*See* AR 734–40.)

---

[8] Plaintiff contends that "the ALJ cannot reject an opinion because of its format where it is based on significant experience and numerous medical records."  (Doc. 20 at 2.)  This contention fails because (1) the ALJ did not reject Dr.

Finally, Plaintiff's contention that the ALJ improperly discounted Dr. Fernandez's opinion as to Plaintiff's physical impairments because it "relied on Plaintiff's subjective reports" is similarly unpersuasive. (*See* Doc. 16 at 14.) There is little indication in Dr. Fernandez's checklist opinion that he supported "his ultimate opinion with his own observations," *see Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199–200 (9th Cir. 2008), as opposed to Plaintiff's self-reports during examinations, and the record reflects numerous treatment notes of Dr. Fernandez which appear to be mostly based on Plaintiff's subjective reports of his pain, (*see, e.g.,* AR 422, 450, 521, 566, 572, 748, 757, 768, 774, 777, 801). Thus, the Court finds the ALJ properly evaluated Dr. Fernandez's opinions as to Plaintiff's physical and mental impairments.

**C.    The ALJ Did Not Err in Her Credibility Determination.**

### 1.    Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation

---

Fernandez's opinions solely because of their format and (2) the ALJ determined, based on a rational interpretation of the evidence, that Dr. Fernandez's opinions were not in fact supported by his treatment notes. (*See* AR 22.) The Court will not disturb the ALJ's interpretation of the evidence. *See Amaral*, 707 F. App'x at 488 (where the evidence is "susceptible to more than one rational interpretation, the ALJ's decision should be upheld.").

for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009); 20 C.F.R. § 404.1529. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet" and it "is the most demanding [standard] required in Social Security cases." *Garrison*, 759 F.3d at 1015 (citation omitted). "General findings are insufficient" to satisfy this standard. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "[R]ather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *see, e.g., Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2008) ("To support a lack of credibility finding, the ALJ [is] required to 'point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims.'" (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)); *cf. Burrell*, 775 F.3d at 1138 (stating that the Ninth Circuit's "decisions make clear that [courts] may not take a general finding . . . and comb the administrative record to find specific" support for the finding).

### 2. Analysis

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 19.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 19.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to

cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for her adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Plaintiff challenges the ALJ's credibility determination only to the extent that the ALJ discredited Plaintiff's testimony due to his activities of daily living.[9] (*See* Doc. 16 at 14–15.) The Court disagrees and finds that this is a valid clear and convincing reason to discredit Plaintiff's testimony. It is appropriate for an ALJ to consider a claimant's activities that undermine claims of totally disabling pain in making the credibility determination. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002) (An ALJ may support a determination that the claimant was not entirely credible by identifying inconsistencies between the claimant's complaints and the claimant's activities of daily living.). It is well-established that a claimant need not "vegetate in a dark room" to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). However, if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair*, 885 F.2d at 603. "Even where the claimant's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ noted that Plaintiff reported that he prepares his own meals, uses public transportation, shops for groceries, uses the computer, performs light household chores, performs

---

[9] Plaintiff's opening brief does not clearly raise the ALJ's credibility determination as a challenged issue. (*See* Doc. 16 at 1.) Plaintiff only briefly mentions the ALJ's credibility determination in the context of Dr. Fernandez's opinion and states that "[t]he ALJ commits harmful error in rejecting Dr. Fernandez's opinion and improperly attacking Plaintiff's credibility." (*Id.* at 15.) In an abundance of caution, the Court will address Plaintiff's contention regarding the ALJ's credibility determination, but Plaintiff is reminded that issues must be clearly raised in his brief or they may be waived. *Cf. Farley v. Colvin*, 231 F. Supp. 3d 335, 341 (N.D. Cal. 2017).

23

yard work, manages his own personal needs, and manages his own finances. (*See* AR 20.) The ALJ

further noted that Plaintiff cares for his two sons including watching them, bathing them, and feeding

them. (AR 20.) The ALJ stated that these activities "indicate[] to the undersigned that [Plaintiff]

not only retains the ability to care for himself but that he is also able to care for the needs of others

as well." (AR 20.) The Court finds that the ALJ properly found that these activities "contradict

claims of a totally debilitating impairment" and Plaintiff's claims that he is unable to work due to

his physical and mental impairments. *See Molina*, 674 F.3d at 1113. Therefore, the Court finds the

ALJ properly discounted Plaintiff's credibility.

## V.       CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in

favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff.


IT IS SO ORDERED.

Dated:    **February 3, 2020**                            /s/ *Sheila K. Oberto*
                                                          UNITED STATES MAGISTRATE JUDGE